## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| P.S., an individual, | |
| Plaintiff, | Case No. 22-cv-3203 |
| v. | **JUDGE** _____ |
| | Related Cases: No. 19-cv-849 |
| **SIX CONTINENTS HOTELS, INC., and** | No. 21-cv-4933 |
| **HOLIDAY HOSPITALITY** | No. 21-cv-4934 |
| **FRANCHISING, LLC.** | No. 21-cv-4935 |
| | No. 21-cv-5022 |
| Defendants. | No. 22-cv-1924 |
| | No. 22-cv-2682 |
| | No. 22-cv-2683 |
| | |
| | **DEMAND FOR JURY TRIAL** |

## COMPLAINT

COMES NOW, the Plaintiff P.S. ("Plaintiff" or "P.S."), by and through her undersigned

counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1.      Plaintiff P.S. is a survivor of human sex trafficking.

2.      P.S.'s life story reads like a tragedy wherein she was forced to endure violence,

trauma, exploitation, manipulation, threats, isolation, humiliation, and degradation.

3.      P.S. met a person that groomed her into trafficking. Ultimately that person—her

trafficker—came to control every aspect of her life. The defining factor of the relationship between

P.S. and her trafficker, was that each night, P.S.'s trafficker forced her to have sex with men for

money.

4.      P.S. was trafficked in Defendants'[1] hotels in Ohio. P.S.'s trafficker rented hotel rooms for one purpose—a location to engage in sex trafficking.

5.      At Defendants' hotels, P.S. was forced to engage in sex with many men every day. Every new customer was another instance P.S. was forced to have sex against her will—that is to say, P.S. was raped multiple times per day by multiple men when she stayed at Defendants' hotels.

6.      P.S.'s trafficker forced her onto Defendants' property where she was repeatedly raped and forced to perform commercial sex acts with "buyers" under threats of physical and psychological abuse.

7.      At some point, P.S. was able to escape the grasps of her trafficker and the prison of Defendants' hotel rooms.

8.      P.S. has spent a considerable amount of time attempting to regain the life that was stripped away from her as a result of her trafficking.

9.      P.S. brings this lawsuit in an attempt to hold the Defendants that imprisoned her, accountable for their role in her trafficking.

## OVERVIEW OF TRAFFICKING

10.     A significant portion of all sex trafficking in the United States of America occurs within the hospitality industry at hotels and motels.

11.     For decades, sex traffickers have brazenly operated in and out of hotels throughout this country. Traffickers paraded throughout hotels, while hospitality giants stood on the sidelines and did nothing. Instead, hotels and motels paid only lip service to campaigns against sex

---

[1] Throughout this Complaint, when Plaintiff refers to "Defendants," that statement is alleged as to all Defendants named in this action. In the instances when Plaintiff alleges a fact as to only one Defendant, or some number of Defendants less than the total, the Complaint clearly names the Defendant to which the allegation is made.

trafficking and stood by collecting millions in profits from rooms rented for the purpose of trafficking.

12.     Defendants Six Continents Hotels, Inc. ("Six Continents"), and Holiday Hospitality Franchising, LLC ("Holiday Hospitality") (collectively "Defendants") knew and have known for decades that sex trafficking repeatedly occurs under their brand flags.

13.     Rather than taking timely and effective measures to thwart this epidemic, Defendants choose to ignore the open and obvious presence of sex trafficking on their branded properties, benefitting from the profit and fees created by rooms rented for this explicit and apparent purpose.

14.     The sex trafficking industry alone pulls in an estimated $99 billion each year, making it the second largest illicit trade after the sale of all illegal drugs.[2] However, traffickers aren't the only profiteers. The hotel industry, including Defendants, makes millions from participating in ventures through renting rooms where victims are sexually exploited and trafficked night after night. Hotels and traffickers have a mutually beneficial relationship, fueled by the sexual exploitation of victims.

15.     The hotel industry ignored human trafficking on their premises, thereby enabling human trafficking in the United States to flourish.

16.     Defendants and other members of the hospitality industry are and have long been aware of the prevalence of human trafficking, particularly sex trafficking, at hotels in general and at the Defendants' own properties. Defendants and others in the industry have access to much public information on the prevalence of human trafficking at hotels, including reports by, among others, the Polaris Project created for the use of the hospitality industry.

---

[2] *Profits and Poverty: The Economics of Forced Labor,* INTERNATIONAL LABOR ORGANIZATION (2017), https://www.ilo.org/global/topics/forced-labour/statistics/lang--en/index.htm.

17.     The hospitality industry, speaking through industry organizations, has in recent years been increasingly vocal about its supposed "unified commitment" to combat human trafficking. Unfortunately, the near-total lack of concrete action by Defendants and the rest of the hospitality industry shows that the industry in fact has a "unified commitment" to the very opposite: continuing with business as usual, so that Defendants and all industry participants continue to profit millions from participating in a venture by renting rooms for human trafficking.

18.     Defendants' decision to prioritize profits over protecting sex trafficking victims resulted in the repeated sexual exploitation and rape of P.S. on their properties.

19.     P.S., a survivor of sex trafficking, brings this action for damages against Defendants pursuant to the Trafficking Victim Protection Reauthorization Act, 18 U.S.C. § 1595. Each Defendant, knowingly benefitted from participation in a commercial business venture that it knew or should have known to be engaging in sex trafficking acts in violation of 18 U.S.C. § 1591(a).

## **PARTIES**

20.     Plaintiff P.S. is a natural person and a resident and citizen of Columbus, Ohio.

21.     Plaintiff is a victim of trafficking pursuant to 22. U.S.C. § 7102(17) and 18 U.S.C. § 1591(a), and a victim of a "severe form of trafficking" as defined under 22 U.S.C. § 7102(16).

   a.     Due to the sensitive and intimate nature of the issues, Plaintiff P.S. requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit her to proceed under a pseudonym and to ensure that Defendants maintain the confidentiality of Plaintiff's identity throughout the pendency of this lawsuit and after.[3]

---

[3] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d

b. Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[4] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[5] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.[6]

c. Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiff fears the stigma from her family, friends, employer, and community if her true identity is revealed in the public record.

d. Plaintiff should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness.[7]

e. Moreover, Defendants will not be prejudiced. Plaintiff will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personal identifying information from the

---

1058, 1069 (9th Cir. 2000).

[4] Fed. R. Civ. P. 10(a).

[5] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992); *Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); *see also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[6] Fed. R. Civ. P. 26(c).

[7] *Does I thru XXIII, 214 F.3d* at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

public docket and assurances that Defendants will not use or publish Plaintiff's identity in a manner that will compromise her safety, personal life, personal relationships, or future employment prospects.

22.    **Defendant Six Continents Hotels Inc.** ("Six Continents") is the ultimate parent company for a United Kingdom incorporated corporation InterContinental Hotels Group PLC ("IHG") in the United States. IHG manages the brands of approximately 5,600 hotels throughout almost 100 countries. Defendant Six Continents is responsible for all brand standards for IHG brand hotels in the United States. Defendant Six Continents also owns, operates, or otherwise manages the software program for making reservations at IHG brand hotels. Defendant Six Continents may be served with service of process by serving its registered agent, The Corporation Trust Company Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

23.    **Defendant Holiday Hospitality Franchising, LLC** ("Holiday Hospitality") is a wholly owned subsidiary of IHG. It is a Delaware corporation and can be served by its registered agent Corporation Service Company, 50 W Broad Street, Suite 1330, Columbus, Ohio 43215, or in the alternative, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.[8]

24.    IHG[9] owns, supervises, manages, controls and/or operates the Holiday Inn by IHG.

25.    Holiday Inn by IHG is classified as a value brand hotel.

26.    IHG owns, supervise, manages, controls and/or operates the Holiday Inn by IHG located at 4530 West Broad St., Columbus, OH 43228 ("Columbus Holiday Inn").

---

[8] Defendants Six Continents and Holiday Hospitality are referred to herein as the "Defendants or IHG."
[9] All actions and inactions of Six Continents and Holiday Hospitality are actions or inactions of IHG. Six Continents and Holiday Hospitality are the same as IHG Corporate.

a. IHG own and control the Holiday Inn by IHG. The Columbus Holiday Inn by IHG is an IHG branded property.[10]

b. IHG employees work throughout the Columbus Holiday Inn by IHG. IHG employees work jobs including front desk and housekeeping. IHG is the principal with control over nearly every element of operations at the Columbus Holiday Inn by IHG. IHG is liable, either directly, vicariously, or indirectly through an agency relationship, for the acts and/or omissions of the employees at its branded hotels, including the Columbus Holiday Inn by IHG where P.S. was trafficked. IHG has an actual and apparent agency relationship with the physical property owners of the Columbus Holiday Inn by IHG as to establish vicarious liability.

c. IHG controlled and dictated the actions and inactions of the Columbus Holiday Inn by IHG through highly specific and detailed brand standards, policies, and procedures.

d. IHG knowingly benefited, or received something of value, from its commercial business venture at the Columbus Holiday Inn by IHG through royalty payments, licensing fees, and percentages of the gross room revenue generated by the hotel operations, including rates charged through rooms where P.S. was trafficked, as well as in maintaining a positive public image for the Columbus Holiday Inn by IHG brand.

e. IHG is subject to the jurisdiction of this Court because it regularly conducts business in Ohio, including through the operation of numerous hotels in Ohio,

---

[10] *Our Brands*, IHG, https://www.ihg.com/content/us/en/about/brands (last visited Jun. 15, 2022).

such as the Columbus Holiday Inn by IHG, contracting to supply services in Ohio. IHG has derived substantial revenue from services rendered in Ohio, have caused injuries to P.S. in Ohio, and profited from a commercial business venture which unlawfully permitted criminals to sell P.S. for commercial sex at the Columbus Holiday Inn by IHG in Ohio.

## JURISDICTION AND VENUE

27.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because Plaintiff resides within this District and a significant part of the acts and omissions giving rise to the cause of action occurred in this District.

29.     Pursuant to Southern District of Ohio Local Rule 3.1(b), this case is related to Case Nos. 2:19-cv-849; No. 2:21-cv-4933; No. 2:21-cv-4934; No. 2:21-cv-4935; No. 2:21-cv-5022; No. 2:22-cv-1924; No. 2:22-cv-2682; and No. 2:22-cv-2683 currently pending before Chief Judge Algenon L. Marbley.

## FACTUAL BACKGROUND

### INTRODUCTION

30.      P.S. brings her claims against major hotel brand corporations for violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA") 18 U.S.C. § 1595(a).

31.     The TVPRA prohibits IHG from engaging in any venture they know or should know involves trafficking, and thereby establishes a non-delegable duty of reasonable care to detect and avoid participation in and benefiting from commercial business ventures they know or should know involve a trafficking venture.

8

32.     An overwhelming majority of commercial sex trafficking transactions occur within the hotels and motels, as traffickers use their rooms as the hub for their operations.[11] Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.

33.     Hotels offer anonymity and non-traceability, privacy, and discretion, making them ideal venues sex trafficking.

34.     As part of their conspiracy, to save costs and continually reap millions of dollars in profits, IHG generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding human trafficking (or suspected) at the branded properties. Furthermore, IHG, did not train staff how to identify and respond to suspected human trafficking, failed to require training of all employees on human trafficking policies and procedures; failed to conduct audits confirming compliance with policies and procedures.

35.     IHG kept no reports or data on suspected incidences or occurrences of human trafficking on their properties, the rate at which those occurrences changed as a result of implementing human trafficking policies and procedures, and the number of rooms that IHG refused to rent or refunded as a result of identifying the venture as one engaged in trafficking. IHG did not establish mandatory and secure reporting mechanisms at the point of sale.

36.     With little to no risk posed to traffickers seeking to use IHG's rooms as a location to force victims like P.S. to engage in commercial sex against her will, the sex trade continues to thrive at IHG's branded properties. Everyday victims of human trafficking like P.S. are repeatedly exploited within the rooms of IHG's branded properties across the country.

---

[11] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (Jul. 22, 2015), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_ 7840754.

37.     Plaintiff's injuries are indivisible and cannot be separated. Plaintiff's injuries are the result of continued instances of ongoing violent traumatizing sexual exploitation.

38.     IHG is jointly and severally liable for the Plaintiff's damages in this case.

**THE SEX TRAFFICKING OF PLAINTIFF P.S. AT THE HOLIDAY INN BY IHG**

39.     P.S. met her trafficker when she was thirty-five (35) years old.

40.     By means of a combination of force, coercion, violence, threats, manipulation, compelled use of and dependency on illegal substances, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, P.S. was held captive and sold for sex by her trafficker.

41.     During the time that she was trafficked, P.S.'s trafficker frequently rented rooms at the Columbus Holiday Inn by IHG because the rooms provided convenient, anonymous, and relatively central locations for "johns" that would pay to engage in sex with P.S.

42.     Throughout her trafficking, P.S.'s trafficker connected with "johns" by posting or causing to be posted advertisements on websites advertising for P.S.'s availability for commercial sex while connected to the IHG's Wi-Fi.

43.     P.S. was forced to have sex with multiple "johns" every day she was trafficked in Columbus Holiday Inn by IHG.

44.     During the winter of 2016, P.S. was subjected to trafficking at IHG's branded Holiday Inn located at 4530 West Broad Street, Columbus, OH 43228. P.S.'s trafficker confined her to the Columbus Holiday Inn by IHG hotel rooms where she lived at this location throughout the winter.

45.     While at the Defendants' hotels, P.S.'s trafficker violently attacked and beat her every day, and psychologically tormented her by withholding food and water, all to ensure that

she could not escape. P.S. remembers going up to three (3) days without food as a form of punishment from her trafficker.

46.     During her captivity at Columbus Holiday Inn by IHG, P.S. was raped, continuously abused physically and verbally, malnourished, psychologically tormented, kidnapped, and imprisoned.

47.     At the Columbus Holiday Inn by IHG, P.S. encountered the same staff on multiple occasions. IHG's staff would have seen the signs of P.S.'s deterioration brought on by the abuse perpetrated by her trafficker, including bruising from physical abuse in occurring in IHG's hotel rooms, as well as signs of malnutrition and poor health.

48.     P.S. was never alone. Her trafficker also controlled her identification documents and cell phone. Every time P.S. interacted with IHG staff, it was readily apparent that P.S. was under the control of her trafficker.

49.     At the Columbus Holiday Inn by IHG, there were loud sounds of abuse and P.S.'s screams for help coming from the room as P.S.'s trafficker forced her to have sex with hundreds of johns.

50.     Further, with each stay at the Columbus Holiday Inn by IHG, it resulted in several consistent red flags, including, but not limited to: Paying for stays in cash; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors going in and out of P.S.'s room; Visible signs of prior/private physical abuse; Loitering and soliciting on hotel grounds; Living out of the hotel room; and Loud noises of abuse or other violence audible to staff and/or other rooms.

51.     Plaintiff was repeatedly raped and otherwise sexually abused hundreds of times at the Columbus Holiday Inn by IHG.

52.     These red flags were open and obvious to anyone working at the Columbus Holiday Inn by IHG and occurred daily for the months that P.S. lived there.

### IHG'S KNOWLEDGE OF SEX TRAFFICKING AT THEIR LOCATIONS

53.     IHG is aware that the hospitality industry is a major life source of the human trafficking epidemic both in the U.S. and abroad.[12] The United Nations,[13] international non-profits,[14] and the U.S. Department of Homeland Security,[15] have documented this well-known epidemic of human trafficking for years and brought particular attention to the indispensable role of hotels. IHG cannot help but be aware of the public outcry against human trafficking, especially when so much of the uproar surrounds their industry.

54.     For example, in 2004 End Child Prostitution and Trafficking ("ECPAT-USA") launched the Tourism Child-Protection Code of Conduct (the "Code") in the United States, identifying the steps companies would need to take to prevent child sex trafficking. ECPAT-USA identified hotel-specific best practices for preventing sex trafficking, such as: (1) not renting by the hour; (2) not permitting cash payments; (3) monitoring online sex ads such as Craigslist and Backpage for their hotel name and pictures of the rooms; (4) changing Wi-Fi passwords in rooms and cafes regularly; (5) watching for a trend of visitors to the same room; (6) being aware of rooms

---

[12] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[13] *Global Report on Trafficking in Persons,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (2020), 84 8available at https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; See also *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners,* UNITED NATIONS OFFICE ON DRUGS AND CRIME (April 24, 2012) available at https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[14] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[15] Human Trafficking and the Hospitality Industry, U.S. DEPARTMENT OF HOMELAND SECURITY (2020), available at https://www.dhs.gov/blue-campaign/hospitalityindustry; Hospitality Toolkit, U.S. DEPARTMENT OF HOMELAND SECURITY (2016), available at https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

with excess condoms, lubricants, and towels; (7) requiring all visitors to be logged, including guest name, visitor name, arrival time, departure time, and room number.

55.      Further, nationwide campaigns have recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue and took initiative as early as 1997 with the United Nations Blue Heart Campaign[16] and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[17] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry, and both campaigns released free online resources and toolkits publicly accessible to any entity concerned with human trafficking.

56.      IHG, on information and belief, have access to individual hotel location do-not-rent ("DNR") lists that often list reasons for the refusal to rent, including the suspicion of human trafficking. IHG nevertheless do not share such information with other hotel locations, thereby preventing other of their hotel locations from acting to protect the victims of such suspected human traffickers.

57.      IHG also have access to public police reports, news reports and internal reports generated by customers and employees, regarding sex trafficking at their own hotel locations in particular.

58.      IHG have access to reviews left by guests on websites such as www.tripadvisor.com, www.yelp.com, www.google.com, and others, wherein guests frequently

---

[16] *The Blue Heart Campaign,* UNITED NATIONS (2022),
https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heino
us%20crime.
[17] *DHS Blue Campaign Five Year Milestone*, DEP'T OF HOMELAND SECURITY (Jul. 22, 2015),
https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

complain about the prevalence of obvious prostitution, hearing physical violence by pimps, and other signs of human trafficking.

59.    A brief examination of just a handful of examples for IHG suffices to show the extraordinary frequency with which IHG has long received and continue receiving evidence and reports that human trafficking runs rampant at their hotel locations:

    a.  Regarding a March 2016 stay at another Holiday Inn by IHG at 33 E Nationwide Blvd, Columbus, OH 43215, close to the Holiday Inn where P.S. was trafficked, a hotel customer wrote a review saying, "I would give negative stars if possible, it is 5:56am, I haven't slept all night. This place is miserable. The bed is lumpy and the mattress is cheap. The toilet was running all night, the faucet drips, the radiator squealed all night long. The other hotel guests on my floor have been up fighting in the hall - I tried to call the desk but got no help for any of my issues-It's probably the most miserable time in a hotel I have ever had."

    b.  In April 2012, two women were arrested on charges of prostitution following a sting operation at an IHG branded Crowne Plaza location in Columbus Ohio.[18]

    c.  A man was charged with human trafficking after being arrested at a prostitution sting in June 2014 at a IHG branded Crowne Plaza hotel in Columbus, Ohio.[19]

---

[18] Jenny Wagner, *Two Charged in Prostitution Sting,* TIMES ONLINE (April 23, 2012) https://www.timesonline.com/story/news/crime/2012/04/23/two-charged-in-prostitution-sting/18415261007/
[19] *Columbus 'Pimp' Sentenced for Trafficking Women,* US ATTORNEYS OFFICE SOUTHERN DISTRICT OF OHIO (October 12, 2017), https://www.justice.gov/usao-sdoh/pr/columbus-pimp-sentenced-trafficking-women

## IHG FACILITATED THE TRAFFICKING OF P.S.

60.     IHG is a face and signatory to the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, [20] and IHG publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Yet, IHG has failed to implement most, if not all these policies. IHG should not only have created effective Brand standards for implementation, mandates, and operations, but also enforced them.

61.     IHG profited from the sex trafficking of Plaintiff P.S. IHG rented rooms to P.S.'s trafficker when they knew, or should have known, that human trafficking was prevalent within their branded properties and at the Columbus Holiday Inn by IHG where P.S. was trafficked. The hotel staff, especially front desk staff, at the Columbus Holiday Inn by IHG property knew or should have known of the obvious signs of P.S.'s trafficking.

62.     IHG benefited from the steady stream of income that P.S.'s trafficker and "johns" bring to their hotel brands. IHG profited from each and every room that P.S.'s trafficker and customers rented.

63.     IHG has made a public commitment to combat human trafficking, and thus, are aware that trafficking is a common problem in the hospitality industry. IHG should have been aware of human trafficking occurring at the Columbus Holiday Inn by IHG where P.S. was trafficked given IHG has access to information, such as police reports, news articles, complaints, and negative reviews regarding the specific locations and surrounding areas.

64.     Moreover, IHG repeatedly collected data on P.S., her trafficker, and the "johns" from her many stays at IHG's hotels, including but not limited to room reservations, identification

---

[20] *See Our Code Members,* ECPAT, https://www.ecpatusa.org/code-members

and payment information, data from websites visited on Wi-Fi, and other guest data. IHG's employees witnessed the obvious signs of P.S.'s trafficking including signs of abuse, frequent male visitors coming in and out of the room, condoms in the trash, loud yelling and fighting, and others. Despite having access to all this information for years, IHG failed to take reasonable measures to stop sex trafficking from occurring in their hotels. If IHG would have taken proper measures, P.S. and other victims like her, would not have been trafficked at their locations.

65.    IHG failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to prevent sexual exploitation on their properties. IHG maintained their deficiencies to maximize profits by:

      a.  Failing to mandate and minimizing costs of training employees and managers on how to spot the signs of human trafficking and sexual exploitation;

      b.  Lowering operating costs and management costs by failing to analyze the data they received regarding criminal activity and customer reviews that indicated sex trafficking was occurring and taking the steps necessary to remedy the problems;

      c.  Collecting and utilizing massive amounts of data from all of their branded locations for marketing and other profit-driven purposes but failing to utilize this same data to combat sex trafficking in their hotels;

      d.  Failing to refuse room rentals, or report guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

      e.  Failing to monitor and track guest wireless network use for illicit commercial

sex purposes or digital activity associated with human trafficking.

f.  Failing to institute proper security measures, including, but not limited to, employing qualified security officers or appropriate cybersecurity measures to actively combat human trafficking and sexual exploitation; and

g.  Failing to use its power as a parent company hold the franchisees accountable for contributing to the prevalence of sex trafficking on their properties.

66.  As a direct and proximate result of these egregious practices on the part of IHG, P.S. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## IHG'S CONTROL OVER THEIR BRAND HOTELS

67.  Upon information and belief, it is a standard practice in the hospitality industry, followed by IHG, for parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to the number of pillows that shall be placed on each bed, to the types of funds accepted, to when, where and how guests should be greeted.

68.  IHG provide their branded properties with signage on and in front of the building intended to assure customers that, if they check into that hotel, they can expect an experience consistent with the standards of the parent hotel brand. The same brand is emblazoned on everything in the hotel, from the pens on the bedside table to the staff uniforms at the front desk.

69.  IHG provide their branded properties brand name recognition, a marketing campaign, and hotel listings in the Global Distribution System (GDS) and other online travel agency databases, as well as with access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Thus,

booking and room reservations are to a substantial extent controlled by IHG.[21] IHG see booking and reservation trends, including for those branded hotels where Plaintiff was trafficked.[22]

70. Upon information and belief, IHG require its branded hotel properties to use a property management system, which is linked to IHG's corporate network and data center, for, among other things, receiving reservations, and processing credit card transactions.

71. Upon information and belief, per the relevant franchise agreements,[23] IHG may enforce their brand standards by means of periodic inspections of their brand hotel locations, backed up with the ultimate threat of termination of the franchise agreement.

72. IHG, exercises day-to-day control over the Columbus Holiday Inn by IHG and its other brand hotels through centralized corporate systems, training, policies, and brand standards. IHG implement and retain brand hotel control, including control over the Columbus Holiday Inn by IHG, as either direct subsidiaries or under the terms of its franchise agreements.

73. Upon information and belief, IHG controls the operations of its branded properties through a variety of means enforced through franchise agreements and related contracts, including but not limited to:

    a. Providing the software, hardware, and platforms where data and information is shared with IHG corporate;

    b. Providing reservation and booking platforms where payment modes and suspicious reservations would suggest trafficking;

    c. Providing and controlling customer review and response platforms;

---

[21] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel- industry/.

[22] Where a branded hotel allows cash to be accepted for payment, monitoring and auditing these trends are important to identifying locations where criminal activity and commercial sex trafficking may be occurring.

[23] Most franchise disclosure documents, which outline the policies and procedures of franchise agreements, can be accessed publicly for free by making an account on https://fddexchange.com/view-fdd-docs.

    d.  Providing training and education to branded hotels through webinars, seminars, conferences, and online portals;

    e.  Requiring branded locations to use IHG vendors for marketing and advertising;

    f.  Restricting what the branded location is able to sell or services it is able to offer;

    g.  Requiring branded locations to source hotel infrastructure, furniture, food and beverage and other products from IHG approved suppliers;

    h.  Requiring branded hotels to use IHG customer rewards program;

    i.  Requiring branded hotels to use IHG property management software;

    j.  Requiring branded hotels to use certain vendors for internet services, cybersecurity, virtual data management, or other requirements for Wi-Fi access and filtering;

    k.  Providing IT support for all property management systems;

    l.  Setting employee wages;

    m.  Sharing profits;

    n.  Standardizing training methods for employees;

    o.  Building and maintaining the facility in a manner specified by the owner;

    p.  Conducting regular inspections and audits of the facility and operation by owner; and

    q.  Fixing prices.[24]

74.    IHG manage corporate training, policies, and procedures on human trafficking,

---

[24] *See e.g.* Holiday Inn 2016 Franchise Disclosure Document, https://fddexchange.com/view-fdd-docs/crowne-plaza-hotels-resorts-2016-fdd-summary/

cybersecurity, guest preferences, reward programs, internet access, hotel furniture, amenities, food and beverage, cleanliness, and/or other hotel brand related policies published and communicated via property management systems with back-end management by IHG.

75. IHG control uniform and required reservation, marketing, customer support systems and loyalty programs at its brand hotels, including the Columbus Holiday Inn by IHG.[25]

76. IHG collect data from branded properties regarding customers who stay at IHG's locations, interact with their websites, and rewards program members. IHG's Privacy Statement says it collects information such as contact information, demographics, financial information, government-issued identification numbers, accommodation preferences, location, IP addresses, and social media content from hotel guests and website users.[26]

77. IHG mandates that the design of the branded property complies with IHG's brand standards and requires branded locations to source from IHG's approved vendors.[27]

78. IHG's team of corporate sales professionals oversee business development and revenue generation and manage business-to-business relationships for the branded properties.[28]

79. IHG require branded properties to use IHG's corporate marketing and advertising resources and materials including online print, televisions, and high-profile sports and event sponsorships.[29]

80. IHG requires branded properties to use IHG's centralized multi-channel reservation platform.[30]

---

[25] *Support for Owners,* IHG Hotel Development, https://development.ihg.com/en/americas/home/develop-a-hotel/support-for-owners (last visited Jun. 22, 2022)
[26] *Privacy Statement,* IHG, https://www.ihg.com/content/us/en/customer-care/privacy_statement (last visited June 22, 2022)
[27] *Supra* n 112.
[28] *Id.*
[29] *Id.*
[30] *Id.*

81.    Through IHG's corporate revenue management team fixes the prices of room rentals at the branded properties to maximize profits, as well as make recommendations to brands to maximize revenues.[31]

82.    IHG require branded properties to use a Defendants' centralized corporate property management and operations system called FPS Leads.[32]

83.    IHG controls and provides centralized technology systems for hotel operations at its brand hotels, including systems its brand hotels must use to access shared customer data and reservations information. IHG also sets and controls Wi-Fi qualifications and/or Wi-Fi qualified service providers, language and policy used on internet landing pages, thresholds for cybersecurity, filtering and/or other guest internet protections, systems used to monitor customer reviews and responses, and other systems related to the daily operations at its brand hotels, including the Columbus Holiday Inn by IHG.[33]

84.    IHG posts job openings for its branded properties on its central career positing website "careers.ihg.com."[34] IHG provides benefits to employees of its branded properties, and upon information and belief control the terms and conditions of their employment.[35]

85.    IHG requires branded properties to comply with its corporate policies relating to Security and Guest Safety, Human Rights, Codes of Conduct, Corporate Governance, UN Global Compact commitments, and compliance with the law.[36]

---

[31] *Id*.

[32] *Id*.

[33] *Id*.

[34] *Join our extraordinary world,* IHG, https://careers.ihg.com/en/ (last visited Jun. 22, 2022)

[35] Matt Lennon, *IHG revamps staff benefits to boost talent attraction and retention,* Hotel Management (Sept. 21, 2022) https://www.hotelmanagement.com.au/2021/09/21/ihg-revamps-staff-benefits-to-boost-talent-retention/

[36] *Policies,* IHG, https://www.ihgplc.com/en/responsible-business/policies#:~:text=At%20IHG%2C%20we%20are%20committed,processes%20to%20uphold%20our%20commitment. (last visited Jun. 22, 2022)

**CAUSE OF ACTION**

**COUNT 1: 18 U.S.C. § 1595 ("TVPRA")**
**(AGAINST ALL DEFENDANTS)**

86.     Plaintiff incorporates each foregoing allegation.

87.     Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and is entitled to bring a civil action under 18 U.S.C. §1595.

88.     Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants breached this duty by facilitating human trafficking through their participation in the harboring of Plaintiff and her trafficker for the purposes of commercial sex induced by force, fraud, or coercion.

89.     Defendants have benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms or received payments or kickbacks for internet usage, Defendants directly benefitted from the sex trafficking of Plaintiff. The actions, omissions, and/or commissions alleged in this pleading were the "but for'" and proximate cause of Plaintiff's injuries and damages.

90.     Plaintiff has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at Defendants' hotels and properties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a.  Awarding Plaintiff all available compensatory damages for each cause of action,

including but not limited to past and future medical expenses; past and future lost wages and loss of earning capacity; past and future emotional distress; consequential and/or special damages; all available noneconomic damages, including but not limited to pain, suffering, and loss of enjoyment of life;

b. Disgorgement of profits obtained through unjust enrichment;

c. Restitution;

d. Statutory and/or treble damages, where available;

e. Punitive damages;

f. Attorneys' fees and expenses;

g. The costs of this action;

h. Pre- and post-judgment interest; and

i. Any other relief the Court or jury deems appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by struck jury.

Dated: August 21, 2022

Respectfully submitted,

*/s/ Steven C. Babin, Jr.*
Steven C. Babin, Jr. (0093584)
Jennifer J. El-Kadi (00100660)
Kristina Aiad-Toss (0101336)
**Babin Law, LLC**
65 East State Street, Suite 1300
Columbus, Ohio 43215
T: 614-761-8800
E: steven.babin@babinlaws.com /
Jennifer.elkadi@babinlaws.com /
Kristina.aiad-toss@babinlaws.com